**In re Petition for DISCIPLINARY AC-TION AGAINST Richard J. CHRYS-LER, an Attorney at Law of the State of Minnesota.**

No. C6-87-2178.

Supreme Court of Minnesota.

Jan. 27, 1989.

William J. Wernz, Director of Office of Lawyers Professional Responsibility, Betty M. Shaw, Sr. Asst. Director, St. Paul, for appellant.

Jack S. Nordby, Minneapolis, for respondent.

PER CURIAM.

We impose a 6-month suspension for failure to file income tax returns.

In 1967, at the age of 47, respondent Richard J. Chrysler was admitted to the Minnesota bar. Beginning in 1972 and continuing to the present, he has failed to file his income tax returns in a timely manner. (See appendix.) His 1986 returns were filed on the day of his disciplinary hearing, March 18, 1988.

In August 1975 the Minnesota Department of Revenue attempted to get respondent to file his state returns for 1972–74. He finally did so in February 1976 and finished paying the taxes owed in November 1977. In October 1980, the Department of Revenue demanded that the 1975–79 returns be filed. In July 1981, respondent promised to file his returns in a month. When the promise was not kept, the Department filed a criminal complaint for knowing failure to file tax returns for 2 years. In April 1982 respondent pled guilty and was fined $100. The returns were eventually filed by the end of 1982.

In February 1987 the Department investigated respondent's failure to file tax returns for 1981–85. When respondent failed to file his 1983, 1984, and 1985 returns by July 1987, a second criminal complaint was brought. In September 1987 respondent pled guilty to one count of knowing failure to file and was fined $330 and placed on probation. As a condition of probation, respondent was required to file his 1983–85 returns by December 1, 1987. He was subsequently given an extension and filed the returns by January 4, 1988. As mentioned, his 1986 returns were filed at the time of the disciplinary hearing in March 1988.

A similar pattern of nonfiling occurred with the federal tax returns (see appendix), notwithstanding numerous requests by the Internal Revenue Service to file the late returns.

It is difficult to determine whether any taxes were owed prior to 1979 because respondent did not keep his records for those prior years. A Department of Revenue agent testified respondent had made payment on his back taxes totalling $5,126.68 in 1976 and 1977. In addition,

respondent owed approximately $11,000 for federal taxes from 1977, 1978, and 1979 due to his failure to compute his alternative minimum tax. This failure increased his state liability for those years, so respondent began paying $300 a month to the state in 1982 until his liability was forgiven under the amnesty program in 1984. Respondent did not owe any taxes on his returns for 1980–86.

Prior to entering law school, respondent served with distinction in the United States Air Force and had been decorated for combat service in World War II. He retired with the rank of lieutenant colonel. Respondent initially practiced law part time until 1970, then joined a small firm. He left the firm in 1975 and since then has practiced alone. During all these years, respondent also held and managed several business investments, some resulting in capital gains and others producing losses. Respondent states he has now substantially reduced his law practice.

The referee found that respondent's failure to file tax returns violated DR 1–102(A)(5) and (6) (for returns prior to September 1, 1985), and Rule 8.4(b) and (d) of the Rules of Professional Conduct (for conduct after September 1, 1985). Finding mitigating circumstances, the referee recommended a 2–year suspension, stayed, however, for 5 years, so long as respondent complied with the terms of probation.

While we have had other cases dealing with failure to file tax returns, none have posed this particular misconduct in such bold relief. There is no other wrongdoing; respondent's professional conduct otherwise has been good. Further, there is no claim the failure to file tax returns was due to alcoholism or mental illness. Neither were there any family problems to which respondent's aberration might be attributable, except possibly for one incident in 1975. Respondent's conduct is inexplicable, although he claimed he suffered anxiety problems and angina pains when the quarterly returns were due.

It can be argued that failure to file tax returns should be left a matter between the government and the taxpayer; that while filing lapses are not to be condoned, they need not require the imposition of professional disciplinary sanctions, at least no severe sanctions. No clients are harmed. Sufficient punishment is administered by the tax authorities. In 1972, however, this court decided *In re Bunker*, 294 Minn. 47, 199 N.W.2d 628 (1972), in which we held that failure to file tax returns is serious professional misconduct, and the bar was put on notice that for future violations there would ordinarily be suspension, except in extreme extenuating circumstances. *Id.*, 294 Minn. at 55, 199 N.W.2d at 632. *See also In re Bunker II*, 269 N.W.2d 71 (Minn.1978).

The rationale of *Bunker* is that lawyers should set an example in filing tax returns. The effective operation of government in a responsible democratic society depends on the willingness of most of its citizens to report their income for tax revenue purposes. As the American Institute of Certified Public Accountants observes, if some taxpayers do not report, those that do bear an unfair burden; and if law-abiding taxpayers should consequently become motivated to join the noncompliers, eventually there could be a breakdown of the voluntary compliance system, and, "if the situation continues to worsen, it could lead to the disruption of our economy and even to a breakdown in society * * *." American Institute of Certified Public Accountants, *Underreported Taxable Income: The Problem and Possible Solutions* 5–6 (1983). *See also* J.A. Pechman, *Federal Tax Policy* 64 (5th ed. 1987).

Members of the legal profession are officers of the third branch of government, especially entrusted with upholding and administering a government of laws. The lawyer disciplinary system is not, nor should it be, a tax collection auxiliary for the government. Whether a tax is owed and whether the taxpayer is able to pay are matters for the government to resolve with the lawyer as with any other taxpayer. But if the legal profession, with its close nexus to our governmental structure, is to maintain its legitimacy and integrity, we think it is not inappropriate for its mem-

bers to be subjected to disciplinary sanctions for failing to file tax returns, the essential first step in our voluntary self-assessment system.

The referee listed 11 mitigation factors in this case: respondent now has retained an accountant; all tax obligations have been satisfied; little or no tax was owing on the late returns; respondent experienced personal, family, and financial difficulties; respondent has a long record of good conduct; respondent is now 69 and has limited his practice; the expense, publicity and emotional impact of the proceedings has had a penalizing effect; respondent has cooperated with the Director; there was no fraud or dishonesty; there was no injury to any client, no mishandling of any client affairs; and respondent is contrite.

While these 11 factors help put this case in perspective, none of them, in this proceeding, is so significant or out-of-the-ordinary as to mitigate appreciably either what respondent did wrong or the sanction to be imposed for the wrongdoing. Respondent did have a family misfortune on one occasion, but this was in 1975 and cannot excuse the failure to file returns in so many other years. Nor has the expense, publicity or emotional impact here been exceptional.

Counsel have exhaustively surveyed our disciplinary cases involving failure to file tax returns, but, not surprisingly, each has its own unique facts, each has other misconduct as well, and none quite fits this case. *See, e.g., In re Munns*, 427 N.W.2d 670 (Minn.1988) (all but 30 days' suspension stayed); *In re Fitzgerald*, 366 N.W.2d 262 (Minn.1985) (90–day suspension); and *In re Johnson*, 414 N.W.2d 199 (Minn.1987) (18–month suspension). Here respondent, for 15 of the last 20 years of his law practice, has chosen not to file his tax returns on time, notwithstanding repeated demands by the state and federal taxing authorities, notwithstanding repeated promises to do so, and notwithstanding twice being criminally convicted for failing to file his state returns. Under these circumstances, we are not inclined to follow the referee's recommendations for a stayed suspension.

IT IS, THEREFORE, ORDERED THAT:

1. Respondent Richard J. Chrysler is suspended from the practice of law for 6 months, commencing 1 week from the date of this decision.

2. Respondent shall pay $750 costs to the Director.

3. Thereafter, respondent may be reinstated to the practice of law, provided he shows the Director that he is then current in his continuing legal education credits and has timely filed his state and federal tax returns (other requirements of Rule 18(e) of Rules on Lawyers Professional Responsibility are waived), and has paid the $750 costs; and

4. Following reinstatement, respondent shall be on probation for a period of 2 years on the following conditions:

(a) That he reports in writing to the Director each year on or before the tax filing due date of each year his compliance with the filing requirements of both the federal and state income tax laws;

(b) That he provide the Director with authorization to enable the Director to verify with the taxing authorities compliance with the filing requirements; and

(c) That respondent shall at all times abide by the Minnesota Rules of Professional Conduct.

## APPENDIX

| Tax Year | State Tax Filing History (1972–86)<br>Date Filed | Federal Tax Filing History (1975–86)<br>Date Filed |
|---|---|---|
| 1972 | February 1976 | |
| 1973 | February 1976 | |
| 1974 | February 1976 | |
| 1975 | April 1982 | September 1977 |

| Tax Year | State Tax Filing History (1972–86) Date Filed | Federal Tax Filing History (1975–86) Date Filed |
|---|---|---|
| 1976 | April 1982 | September 1977 |
| 1977 | October 1982 | May 1980 |
| 1978 | June 1982 | After March 1982 |
| 1979 | October 1982 | After March 1982 |
| 1980 | November 1982 | (No information) |
| 1981 | May 1987 | March 1985 |
| 1982 | May 1987 | August 1985 |
| 1983 | January 1988 | January 1988 |
| 1984 | January 1988 | January 1988 |
| 1985 | January 1988 | January 1988 |
| 1986 | March 1988 | March 1988 |