In re Petition for DISCIPLINARY AC-
TION AGAINST Roger T. SAHR, an
Attorney at Law of the State of Minne-
sota.

No. C3–88–26.

Supreme Court of Minnesota.

Aug. 25, 1989.

William J. Wernz, Director of the Office of Lawyers Professional Responsibility, Betty M. Shaw, Sr. Asst. Director, St. Paul, for appellant.

Kenneth Tilsen, St. Paul, for respondent.

PER CURIAM.

I

This matter came before us on a petition for disciplinary action, filed by the Office of Lawyers Professional Responsibility (hereinafter Director), asking that attorney Roger Sahr (hereinafter Respondent) be disciplined.

On January 7, 1988, the Director filed the petition for disciplinary action alleging Respondent had failed to timely file his state and federal tax returns for the years 1983–1986. In his answer, Respondent admitted the allegations contained in the Director's petition were accurate and offered an explanation in mitigation for the delinquencies. As the Respondent and the Director stipulated to dispensing with the panel proceeding pursuant to Rule 10(a), Rules on Lawyers Professional Responsibility (hereinafter RLPR), this court ordered, on February 3, 1988, a hearing before a referee. A hearing was held on

March 11, 1988. The referee found that the allegations in the petition were true but recommended a stayed suspension of six months and probation for three years. The Director now asks this court to impose a four month suspension on the Respondent, which conflicts with the stayed suspension recommended by the referee.

## II

The Director does not challenge the findings of the referee except as to the significance of certain events and facts which the referee found or suggested mitigated the misconduct of the Respondent.

Respondent is a 63–year–old attorney who has been licensed to practice in Minnesota since January of 1952. Respondent has practiced in Minneapolis for the bulk of his legal career. The referee found and Respondent admitted that he did not timely file his state or federal income tax returns for the years 1983–1986. Respondent had substantial income during those years averaging over $100,000 per year. On September 23, 1987, Respondent, Roger Sahr, was charged in Hennepin County with four counts of failure to file Minnesota State Income Tax Returns, a gross misdemeanor. Subsequent to the charge, on October 12, 1987, Respondent filed all tax returns, including the Minnesota tax returns that were the subject of the charge and the corresponding federal returns.[1] On October 13, 1987, the Director sent to the Respondent a Notice of Investigation pursuant to Rule 8(a) RLPR. Respondent owed $26,451 in state taxes and $104,367 in federal taxes for the years 1983–1986. On November 1, 1987, Respondent paid the amount owed on the delinquent state taxes plus a penalty on the 1986 return. Additionally, Respondent was assessed approximately $12,500 in penalties and interest on the delinquent state taxes and $44,510 in penalties and interest on the delinquent federal taxes. At the time of the hearing the penalties and the federal taxes remained unpaid but Respondent had placed

his family home of 24 years on the market in order to apply the net proceeds of the sale against the amounts due. Respondent states in his brief that the home has been sold and all net proceeds have been applied to the amounts due. At oral argument, Respondent's attorney informed the court that the proceeds from the house sale had been used to satisfy all remaining federal taxes, penalties, and interest except for some amounts due for the year 1983. The family home was Respondent's only significant asset.

The referee found the 1981 failure and liquidation of a claims adjusting firm, which Respondent was involved in, caused him financial problems and contributed to his non-filing of returns. The last year the claims adjusting firm filed a tax return was 1982, however, and no information relating to that firm appeared on Respondent's 1983 returns when they were filed. Respondent said certain business matters were not fully resolved in 1982, the year preceding his first delinquent return.

Exacerbating his financial problems, Respondent has spent a substantial amount of his income on paying the college and law school costs of his three children. Respondent has also provided his mother a monthly stipend since 1960, which in the last four to five years has been approximately $500 a month. Respondent's legal practice is his family's only source of income, except for those children who have become self-supporting.

The referee found that a family crisis on March 23, 1985, while "not any part of the initial cause of Respondent's failure to file his 1983 tax returns, * * * was a significant contributing factor toward Respondent's continuing failure to come to grips with his financial problems and with the need for filing income tax returns and paying the taxes due." Respondent's wife testified that this event was a major trauma in Respondent's and the family's life. Respondent is apparently unable to speak of the event. Mrs. Sahr said this tragedy

---

**1.** Respondent pled guilty to one count of failure to file Minnesota State Income Tax Returns on

December 2, 1987.

contributed to the failure to sell their home earlier and satisfy the amounts owed. Mrs. Sahr acknowledged that despite the tragedy Respondent was able to continue to work professionally.

The referee found the Respondent had fully cooperated with the Director throughout the proceedings. Further, the referee found Respondent's expressed remorse and apology were supported by his demeanor during testimony. Finally, the referee found Respondent's professional reputation for skill and character to be of high quality.

Based on his findings the referee recommended, inter alia:

1. Respondent shall be publicly censured for his failure to file income tax returns and to pay the taxes due on a timely basis.

2. That Respondent be suspended from the practice of law for a period of six months; but that the suspension be stayed and Respondent be placed on probation for a period of three years.

The Director disputes the referee's recommendations and contends that Respondent's family tragedy was not a significant contributing factor to the failure to timely file tax returns. The Director also contends the mitigating factors here do not justify a stay of the suspension and that suspension is appropriate in this case. The Director recommends a four month suspension and three years probation.

### III

 This court gives great weight to the findings of fact, the conclusions and the recommendations of the referee in attorney discipline matters. *In re Schmidt*, 402 N.W.2d 544, 545 (Minn.1987). Nevertheless, the final responsibility for determining the appropriate discipline rests with this court. *Id.* This court considers failure to file income tax returns to be serious misconduct. *In re Ylitalo*, 420 N.W.2d 615, 616 (Minn.1988). Probation may be appropriate where extreme and extenuating circumstances, such as illness, chemical dependency, or depression are shown to have caused the misconduct. *See id.* It is

the Respondent's obligation to prove the mitigating circumstances caused the misconduct by clear and convincing evidence. *In re Munns*, 427 N.W.2d 670, 672 (Minn. 1988). But all evidence regarding extenuating circumstances will be considered in determining the extent of the disciplinary action to be taken. *In re Jones*, 383 N.W.2d 686, 688 (Minn.1986). When determining the discipline the court considers the nature of the misconduct, the cumulative weight of the disciplinary rule violation, the harm to the public, and the harm to the legal profession. *Munns*, 427 N.W.2d at 671.

### IV

 The Director contends that the family tragedy could not have been causally related to Respondent's failure to timely file his returns because it occurred nearly a year after Respondent failed to file his 1983 returns. The Director notes the delinquencies persisted for two years after the incident. The Director's argument does not accurately reflect the referee's finding. The referee specifically recognized that the family tragedy did not cause the initial delinquency. The referee said, however, that the tragedy contributed to Respondent's continuing failure to come to grips with his financial difficulties and his failure to file. Given this narrower reading of the referee's finding, we find ample support in the record for the finding and nothing which is inconsistent. The testimony of Mrs. Sahr suggested the tragedy contributed to the decision not to sell the family home and thereby end the financial problems. Moreover, Mrs. Sahr made it very clear that her husband was deeply affected by the tragedy. This testimony directly supports the referee's finding.

The Director argues the Respondent was able to continue his professional practice despite the tragedy. We do not think Respondent's ability to carry on his professional affairs during this time is inconsistent with the referee's finding that Respondent's personal life was deeply affected by the family tragedy.

The Director further argues that Respondent's financial difficulties were the real

reason for his delinquent tax filing. Again, that Respondent's financial difficulties played a part in his failure to timely file his tax returns does not seem to us inconsistent with the referee's finding. We acknowledge, however, that financial difficulties, standing alone, would not serve to mitigate Respondent's misconduct.

V

The Director relies heavily on this court's recent decision in *In re Chrysler*, 434 N.W.2d 668 (Minn.1989) to suggest that none of the mitigating factors found by the referee justify a stay of the suspension in this case. The attorney in *Chrysler* received a six month suspension and a two year probation. *Id.* at 670. In *Chrysler* the attorney had essentially failed to timely file any state or federal income tax returns for 15 years. *Id.* at 670. Additionally, the attorney in *Chrysler* twice pled guilty to criminal complaints of failure to file tax returns prior to the disciplinary action. *Id.* at 668. The *Chrysler* court noted that the attorney there had experienced a "family misfortune" but that the pattern of delinquency had continued for over 10 years after the family problem. *Id.* at 670. We find the misconduct in *Chrysler* substantially more egregious than that of the Respondent. Moreover, our prior cases involving suspensions of greater than 30 days for failure to timely file personal income tax returns have generally involved additional misconduct beyond mere delinquency in filing. *See In re Skonnord*, 422 N.W.2d 726 (Minn.1988) (failed to timely file employer's quarterly withholding return or to pay taxes withheld from employee paychecks in addition to delinquent individual returns: 60 day suspension); *In re Speakman*, 418 N.W.2d 162 (Minn.1988) (failed to timely file individual returns in 1981 and 1983, failed to timely file employer's quarterly withholding returns, mishandled probate of estate: indefinite suspension, eligible for reinstatement in six months); *In re Shaw*, 396 N.W.2d 573 (Minn.1986) (at the time tax filing delinquency occurred there was other minor misconduct and attorney was on probation for misappropriation of funds and failure

to keep adequate books: indefinite suspension, eligible for reinstatement in one year); *In re Marshall*, 394 N.W.2d 790 (Minn. 1986) (failed to mitigate law partner's misconduct, permitted trust to become short of funds and overdrawn, kept inadequate books, made false representations to this court, failed to timely file tax returns: indefinite suspension); *In re Jones*, 383 N.W.2d 686 (Minn.1986) (while on probation for failure to attend to client matters and failure to communicate with clients, violated conditions of probation by delinquency on individual income tax returns: indefinite suspension, eligible to apply for reinstatement 90 days). The misconduct of Respondent is limited to delinquency in filing individual tax returns and does not generally mirror the misconduct of attorneys receiving greater than a 30 day suspension in tax filing cases.

Nevertheless, we are troubled by the reasons, or lack thereof, for Respondent's initial failure to timely file his tax returns. We do not believe the circumstances surrounding Respondent's initial failure to file serve to mitigate that failure.

We hold, therefore, that the Respondent is hereby publicly censured for his failure to file income tax returns and to pay the taxes due on a timely basis. If requested by the Director, Respondent shall provide any releases or other documents necessary in order to enable the Director to obtain verification of filing or other information from the Internal Revenue Service or the Minnesota Tax Department.

We further order that Respondent be suspended from the practice of law for a period of 30 days and Respondent be placed on probation for a period of three years. Upon petition for reinstatement, the Respondent shall not be required to take the written examinations specified by Rule 18(e) of the Rules on Lawyers Professional Responsibility. Further, Respondent shall pay to the Office of the Lawyers Professional Responsibility the sum of $750 for costs in this proceeding.

KELLEY, J., took no part.